JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| E.F., et al., <br><br> Plaintiffs, <br><br> v. <br><br> NEWPORT MESA UNIFIED SCHOOL DISTRICT, <br><br> Defendant. | Case No.: SACV 14-00455-CJC(RNBx) <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiffs E.F., by and through his parents, Eric and Aneida Fulsang, and Eric and Aneida Fulsang (collectively, "Plaintiffs") bring this action against Defendant Newport-Mesa Unified School District (the "District") for violations of several state and federal

statutes. (Dkt. No. 1 ["Compl."].) Before the Court is the District's motion for summary judgment on the Complaint's remaining five claims. (Dkt. No. 43.) For the following reasons, the Court GRANTS the District's motion.

## II. BACKGROUND

E.F. is a young boy who has resided within the jurisdictional boundaries of the Newport-Mesa Unified School District in California at all relevant times during this litigation. (Dkt. No. 13 ["Administrative R."] at 491.) E.F. has autism and suffers from cognitive and communicative delays. Because of his autism, E.F. is eligible for special education services under the Individuals with Disabilities Education Act ("IDEA"). His eligibility obligates the District to provide him with a "free appropriate public education" ("FAPE") suited to his individual needs. 20 U.S.C. § 1412(a)(1). As required by IDEA, the District convenes regular meetings to develop an annual "individualized education plan" ("IEP") identifying E.F.'s educational goals and laying out particular services the District will provide to E.F. in an effort to achieve those goals. The District placed E.F. in its special education program in February 2009 and has held developed IEPs at annual IEP conferences thereafter. (Administrative R. at 563.)

Dissatisfied with the District's efforts to accommodate E.F.'s needs, E.F.'s parents filed a request for a due process hearing before the California Office of Administrative Hearings ("OAH") on May 12, 2012. (Compl. ¶ 66.) The OAH hearing was held before an administrative law judge ("ALJ") in October 2013, where Plaintiffs contended that the District failed to provide E.F. with a FAPE in a number of different ways, including by failing to properly assess E.F.'s capabilities, sufficiently train its staff, and provide E.F. with an electronic assistive technology ("AT") device at the appropriate time. (Administrative R. at 1274.). After receiving approximately 50 documents into evidence and hearing testimony from 16 witnesses, the ALJ issued a decision on December 26,

2013 (the "OAH Decision"). (*See id.* at 1271–1331.) The ALJ rejected all of Plaintiffs' claims except one: that the District should have given E.F. an electronic assistive technology device approximately one year earlier than it did. (*Id.* at 1274.) Accordingly, the ALJ awarded E.F. 20 sessions of 20-minute, individual AT services to assist him with operating the AT device—an iPod Touch—for the purposes of functional communication. (*Id.* at 1331.)

In March 2014, Plaintiffs filed this action, appealing the OAH Decision to this Court pursuant to 20 U.S.C. § 1415(i)(3)(A) and asserting 11 other causes of action. (*See* Compl.) This Court affirmed the OAH Decision on June 23, and after a number of other dismissals and joint stipulations, only five causes of action remain: the second, third, eighth, tenth, and twelfth. The second and third causes of action allege violations of two federal civil rights statutes: section 504 of the Rehabilitation Act ("section 504") and Title II of the Americans with Disabilities Act ("ADA"), respectively. The eighth cause of action alleges violation of the California Unruh Civil Rights Act and two sections of the California Civil Code. The tenth cause of action alleges a breach of the duty to supervise students and staff pursuant to the California Constitution and California Education Code. And the twelfth cause of action is for attorneys' fees, pursuant to an IDEA provision that awards attorneys' fees to a prevailing party in an IDEA action.

### III.  LEGAL STANDARD

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial

burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 325. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 249.

Where the movant will bear the burden of proof on an issue at trial, the movant "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, where the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, *Celotex Corp.*, 477 U.S. at 325. Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A party opposing summary judgment must support its assertion that a material fact is genuinely disputed by (i) citing to materials in the record, (ii) showing the moving party's materials are inadequate to establish an absence of genuine dispute, or (iii) showing that the moving party lacks admissible evidence to support its factual position. Fed. R. Civ. P. 56(c)(1)(A)–(B). The opposing party may also object to the material cited by the movant on the basis that it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But the opposing party must show more than the "mere existence of a scintilla of evidence"; rather, "there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party, and draw all justifiable inferences in its favor. *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment. *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

## IV. ANALYSIS

### A. Rehabilitation Act Cause of Action

Plaintiffs' second cause of action alleges that the District failed to provide E.F. with a FAPE that met the requirements of section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (Compl. ¶¶ 195–213.) Section 504, like IDEA, requires school districts to provide disabled students with a FAPE, and although the FAPE requirements under IDEA and section 504 are not identical, "a school district's provision of a FAPE under the IDEA meets Section 504 FAPE requirements." *K.M. v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1099 (9th Cir. 2013). The only area in which the ALJ determined that the District failed to provide E.F. with a FAPE was in its failure to provide him with an AT assessment and device between February 2012 and January 2013. Because the ALJ's

findings are preclusive here, *id.* at 1101, Plaintiffs' potential success on their section 504 cause of action is therefore limited to the narrow AT issue.

Plaintiffs seek injunctive and declaratory relief as well as compensatory damages for their section 504 claim. Their plea for injunctive and declaratory relief is apparently premised on their allegation that the District's "discriminatory conduct is ongoing." (Compl. ¶ 212.) But because the ALJ determined that the District's sole violation of IDEA was its failure to timely provide E.F. with an AT assessment or device, the District has been compliant with IDEA's FAPE requirement since January 2013, when it finally gave E.F. that assessment and device. (Administrative R. at 1274.) And because the District is currently compliant with IDEA's FAPE requirement, it is also compliant with section 504's FAPE requirement. *See K.M.*, 725 F.3d at 1099. Accordingly, declaratory and injunctive relief are unavailable. The only potential relief available to Plaintiffs is compensatory damages for the previous denial of a FAPE—*i.e.*, the District's failure to provide E.F. with an AT assessment and device between February 2012 and January 2013.

Recovery of damages under section 504 requires a showing of intentional discrimination. *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998) ("[C]ompensatory damages are not available under Title II or § 504 absent a showing of discriminatory intent."). Intentional discrimination does not require a showing of discriminatory animus or ill will, but Plaintiffs must at least show "deliberate indifference," or "knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). Negligence is not sufficient. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001).

//

The District argues that the record lacks any evidence that it acted with deliberate indifference, and that it is therefore entitled to summary judgment on Plaintiffs' section 504 cause of action for damages. Plaintiffs, in response, cite to three pieces of the record. The first is a portion of the examination of Dr. Kathy Murphy, a District employee, at the OAH Hearing. There, Plaintiffs' counsel asked Dr. Murphy why she had not proposed an AT assessment of E.F. when she heard about him using an iPad. (Dkt. No. 46-2 at 6.) Dr. Murphy responded that although the school was "excited to see" that E.F. had begun to use an electronic device, his failure to "demonstrat[e] the rest of the readiness skills at that time" convinced Dr. Murphy that an AT assessment was premature. (*Id.*) She continued to explain that the school district "did many things to make [E.F.] ready" for an electronic device, including "collaborating with the teacher to make . . . adjustments and to supplement . . . visual aids for communication purposes across the day." (*Id.*)

No reasonable factfinder could find that Dr. Murphy's testimony supports a finding that the District acted with deliberate indifference. To the contrary, Dr. Murphy offered her opinion as to the value of an AT assessment, provided a rationale for that opinion, and described how the District proceeded in lieu of an AT assessment. This evidence demonstrates that the District was thoughtful and thorough—though ultimately wrong—when it considered the best way to provide E.F. with an education. *See Zasslow v. Menlo Park City Sch. Dist.*, No. C-01-0537 SC, 2001 WL 1488617, at *17 (N.D. Cal. Nov. 19, 2001) (noting, in the context of an IDEA violation, that "[f]ar from intentionally discriminating against Plaintiffs for the unfortunate disabilities from which they suffer, the District has devoted time and expense to coming to some arrangement that would satisfy Plaintiffs"); *see also Brantley ex rel. Brantley v. Ind. Sch. Dist. No. 625, St. Paul Pub. Schs.*, 936 F. Supp. 649, 657 (D. Minn. 1996) (holding that a plaintiff could not meet the section 504 *mens rea* requirement because "[t]o the extent the District made any inappropriate decisions, they were, at most, errors in professional judgment").

Plaintiffs' second citation to the record is to a single-page IEP summary. (Dkt. No. 48; Exh. 12.) The summary describes an IEP conference where E.F.'s parents and teachers adjusted goals, identified successes, and discussed ongoing concerns. (*Id.*) While the IEP team did conclude that E.F. had made "limited progress" and merited a "re-evaluation," nothing in the IEP summary provides a basis for an allegation of intentional discrimination, and Plaintiffs provide no substantive explanation for the citation. (*Id.*)

Plaintiffs' final citation to the record in support of a finding of deliberate indifference unhelpfully cites to four declarations in their entirety. Those declarations collectively consist of more than 40 pages, leaving unclear what exactly in those declarations the Plaintiffs believe would support a finding of deliberate indifference. "The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate reference so that it could be conveniently found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

Suffice it to say that none of Plaintiffs' citations to the record reveal any evidence that could enable a reasonable factfinder to conclude that the District acted with deliberate indifference toward E.F. And Plaintiffs' Statement of Facts, (Dkt. No. 50), that they filed in opposition to the District's summary judgment motion is similarly deficient. Of its 35 facts, only one could reasonably be said to have anything at all to do with the District's *mens rea*—Plaintiffs' account of comments made by E.F.'s teacher, Ms. Daria Fenton, at the February 26, 2014 IEP conference. There, Ms. Fenton commented that "whether or not E.F. can know A, B, and C isn't as important as being able to identify scissors or crayons in the grand scheme of life for him." Although Ms. Fenton might have chosen different words, the thrust of her sentiment is clear: she felt that E.F. would benefit more from being taught functional skills rather than abstract

skills. While reasonable people could disagree over the merits of this belief, no reasonable factfinder could conclude that it is evidence of deliberate indifference or intentional discrimination. On the contrary, it is plain that Ms. Fenton was recommending the course of teaching that she thought would be *most* valuable for E.F. Indeed, Ms. Fenton continued, "I'm just saying that right now [learning the alphabet is] not what I view as the most important thing for [E.F.'s] functioning on a daily basis." The only credible reading of Ms. Fenton's comments is that she was attempting to tailor E.F.'s education to his needs as required by the IDEA and section 504 FAPE requirements, not that she was intentionally discriminating against him as a result of his disability. *See Zasslow*, 2011 WL 1488617, at *17 ("[A] good-faith attempt to comply with [section 504] is clearly apparent here, and that is enough to put to rest charges that the District somehow deliberately singled out the Plaintiffs simply because of their disabilities.").

Ms. Fenton's comments also fail to raise a triable issue of material fact for two additional reasons. First, they are unrelated to the only way in which the District failed to provide a FAPE under IDEA. Her comments have nothing to do with the District's failure to provide E.F. with an AT device. *See Mark H.*, 513 F.3d at 938 ("[A] public entity can be liable for damages under § 504 if it intentionally or with deliberate indifference *fails to provide meaningful access or reasonable accommodation* to disabled persons" (emphasis added).). And second, Ms. Fenton's comments post-date the OAH Decision entirely. Plaintiffs may believe that the District's decision to teach E.F. functional skills rather than abstract skills is a *new* violation of section 504's FAPE requirement, and that the District was deliberately indifferent when it committed *this* violation. But to demonstrate that, they will need to first exhaust their administrative remedies through IDEA. *See J.W. v. Fresno Unified Sch. Dist*, 570 F. Supp. 2d 1212, 1219 (E.D. Cal. 2008) ("[C]laims asserted under Section 504 are subject to the IDEA exhaustion requirement.").

Apart from their citations to the record, Plaintiffs argue that the District "dumb[ed] down" E.F.'s academics and limited his educational resources based on the "self-serving determination that E.F. lacked the cognitive ability and 'readiness skills' to access and benefit from the requested auxiliary equipment." (Dkt. No. 48 [Pl.'s Opp'n] at 19.) These allegations are without evidentiary support. The record is replete with evidence of good-faith efforts on the part of the District to provide E.F. with an appropriate education. "This is not to say that the District has behaved impeccably, or that its conduct has been error-free." *Zasslow*, 2001 WL 1488617, at \*17. But the evidence is such that no reasonable factfinder could conclude that the District acted with deliberate indifference. As a result, Plaintiffs may not collect compensatory damages under section 504. Because Plaintiffs may not collect damages, nor may they obtain declaratory or injunctive relief on their section 504 cause of action, the Court GRANTS partial summary judgment on the second cause of action.

### B.   ADA Cause of Action

Plaintiffs' third cause of action is for a violation of Title II of the ADA. In the disabled student accommodation context, Title II provides for at least two theories of liability. First, a plaintiff may allege that a district's failure to provide a FAPE under section 504 also violates the antidiscrimination provisions of the ADA, 28 C.F.R. § 35.130. *See*, *e.g.*, *T.B. v. San Diego Unified Sch. Dist.*, No. 12-56060, 2015 WL 4591816, at \*11 (9th Cir. July 31, 2015) ("[T]he [plaintiffs] alleged that the school district violated the ADA and Section 504 of the Rehabilitation Act by failing to offer and implement [a FAPE]."). Alternatively, a plaintiff may allege that a district has failed to meet the requirements of the ADA's "effective communications" regulations, 28 C.F.R. § 35.160, which require public entities to furnish appropriate auxiliary aids and services where necessary. *See*, *e.g.*, *K.M.*, 725 F.3d at 1099 ("[Plaintiffs' ADA claim is

not] predicated on a denial of FAPE under any definition of that term . . . [rather, Plaintiffs] ground their claims in the Title II effective communications regulation.").

Here, the parties disagree on the relevant theory of the violation. The District argues that according to the Complaint, Plaintiffs' theory is that the District's failure to provide a FAPE violated the ADA's antidiscrimination regulations. (Dkt. No. 52, Def.'s Reply, at 6.) Plaintiffs, in their opposition brief, argue that their theory is actually that the District failed to comply with the ADA's effective communications regulations. (Pl.'s Opp'n at 19–21.)

Because Plaintiffs' Complaint, and not their brief in opposition to summary judgment, defines the nature of their legal theories, the Court turns to the Complaint to determine the nature of Plaintiffs' ADA violation theory. In paragraph 218 of the Complaint, Plaintiffs pled that E.F.'s rights under the ADA were violated "due to the denial of FAPE." And in paragraph 217, Plaintiffs note that as "there is no significant difference between the substantive standards of the ADA and the Rehabilitation Act, the claims are therefore analyzed together." This statement only makes sense if both the section 504 and ADA claims are premised on the alleged denial of a FAPE. *See*, *e.g.*, *T.B.*, 2015 WL 4591816, at *11 ("[In the antidiscrimination context, the] language of the ADA is almost identical [to section 504], and courts typically analyze the two provisions together."). The pleadings do not contain the words "effective communications," and they specifically note that the "pertinent part" of the ADA regulations are the antidiscrimination regulations. (Compl. ¶ 220 [citing 28 C.F.R. § 35.130(b)(3)]). There can be little doubt that when Plaintiffs filed their Complaint, they—and the District— understood the ADA cause of action to allege that the District's denial of a FAPE violated the ADA's antidiscrimination provisions, not that the District violated the ADA's effective communication regulations.

It is now too late in the day for Plaintiffs to change course and pick a different theory of liability under the ADA. A party "may not effectively amend its Complaint by raising a new theory . . . in its response to a motion for summary judgment." *La Asociacion De Trabajadores De Lake v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010). The District had no notice that Plaintiffs would attempt to switch theories in their opposition brief. And Plaintiffs have had sixteen months to amend their Complaint, and have not done so. They may not reverse course now. Because the ADA claim is premised on a denial of a FAPE, it suffers from the same defects that Plaintiffs' section 504 claim does. As a result, the Court GRANTS partial summary judgment as to the third cause of action.

### C. State Law Causes of Action

Plaintiffs' eighth cause of action is for violations of the Unruh Civil Rights Act and California Civil Code sections 51 and 54.1. Their tenth cause of action is for breach of the duty to protect and supervise students and employees pursuant to Article I section 28 of the California Constitution and the California Education Code, sections 32260–32262, 44807, and 44808. State sovereign immunity prevents Plaintiffs from bringing either of these causes of action against the District in federal court.

Pursuant to the Eleventh Amendment of the United States Constitution, a state is immune from private suits in federal court unless Congress has explicitly and validly abrogated the state's sovereign immunity or the state waives its immunity. *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("[N]onconsenting States may not be sued by private individuals in federal court."). It is well-settled that school districts are arms of the state for the purposes of the state sovereign immunity doctrine. *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 251 (9th Cir. 1992); *Stoner v. Santa Clara Cty. Office of Educ.*, 502 F.3d 1116, 1123 (9th Cir. 2007). And as

to the state law claims at issue here, Congress has not abrogated California's state sovereign immunity, nor has California waived that immunity. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985) (holding that Article III section 5 of the California Constitution does not constitute a waiver of California's Eleventh Amendment immunity); *Corales v. Bennett*, 567 F.3d 554, 573 (9th Cir. 2009) (dismissing Unruh Act claims against school officials in federal court as barred by the Eleventh Amendment); *Zasslow*, 2001 WL 1488617, at *18 (dismissing California Education Code claims against school district in federal court as barred by the Eleventh Amendment). Accordingly, the Court finds that the District is immune from Plaintiffs' state law claims pursuant to the doctrine of state sovereign immunity, and the Court GRANTS partial summary judgment as to the eight and tenth causes of action.

### D. Attorneys' Fees Cause of Action

Plaintiffs' twelfth cause of action is for attorneys' fees under IDEA. Pursuant to IDEA, "the court, in its discretion, may award reasonable attorneys' fees" to, among others, "a prevailing party [in an IDEA action] who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3). A party who only partially prevails "may recover attorneys' fees commensurate with the party's 'degree of success.'" *L.H. v. Chino Valley Unified Sch. Dist.*, 944 F. Supp. 2d 867, 871 (C.D. Cal. 2013) (quoting *Aguirre v. Los Angeles Unified Sch. Dist.*, 461 F.3d 1114, 1121 (9th Cir. 2006)).

A motion for summary judgment is not the proper procedural vehicle to adjudicate this particular attorneys' fee dispute. If Plaintiffs wish to recover their attorneys' fees from the IDEA litigation, they should file an appropriate post-adjudication motion and carefully detail what proportion of their attorneys' fees are attributable to the AT issue. If the District wishes to argue that Plaintiffs are not entitled to the requested amount of attorneys' fees for whatever reason, it may do so in response to that motion.

## V. CONCLUSION

For the foregoing reasons, the District's motion for summary judgment is GRANTED.

DATED: August 25, 2015

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE