1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10              SOUTHERN DIVISION

11

| | |
|---|---|
| | ) Case No.: SACV 14-00455-CJC(RNBx) |
| **E.F., et al.,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) **ORDER GRANTING IN PART** |
| v. | ) **PLAINTIFFS' MOTION FOR** |
| | ) **ATTORNEYS' FEES** |
| **NEWPORT MESA UNIFIED SCHOOL** | ) |
| **DISTRICT,** | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

## I.  INTRODUCTION

Plaintiff E.F., by and through his parents, Eric and Aneida Fulsang, and Eric and Aneida Fulsang (collectively, "Plaintiffs") brought this action against Defendant Newport-Mesa Unified School District (the "District"), appealing the judgment of an

administrative law judge in an administrative hearing and asserting violations of several state and federal statutes.  (Dkt. No. 1 ["Compl."].)  Before the Court is Plaintiff's motion for attorneys' fees.  (Dkt. 56.)  For the following reasons, the Court GRANTS IN PART Plaintiffs' motion and awards **$38,240** in attorneys' fees. [1]

## II.   BACKGROUND

E.F. is a young boy who has resided within the jurisdictional boundaries of the Newport-Mesa Unified School District in California at all relevant times during this litigation.  (Dkt. No. 13 ["Administrative R."] at 491.)  E.F. has autism and suffers from cognitive and communicative delays.  Because of his autism, E.F. is eligible for special education services under the Individuals with Disabilities Education Act (the "IDEA").  His eligibility obligates the District to provide him with a "free appropriate public education" ("FAPE") suited to his individual needs.  20 U.S.C. § 1412(a)(1).  As required by the IDEA, the District convenes regular meetings to develop an annual "individualized education plan" ("IEP") identifying E.F.'s educational goals and laying out particular services the District will provide to E.F. in an effort to achieve those goals.  The District placed E.F. in its special education program in February 2009 and has developed IEPs at annual IEP conferences thereafter.  (Administrative R. at 563.)

Dissatisfied with the District's efforts to accommodate E.F.'s needs, E.F.'s parents filed a request for a due process hearing before the California Office of Administrative Hearings ("OAH") on May 12, 2012.  (Compl. ¶ 66.)  The OAH hearing was held before an administrative law judge ("ALJ") in October 2013, where Plaintiffs contended that the District failed to provide E.F. with a FAPE in a number of different ways, including by

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for October 19, 2015 at 1:30 p.m. is hereby vacated and off calendar.

failing to properly assess E.F.'s capabilities, insufficiently training its staff, and neglecting to provide E.F. with an electronic assistive technology ("AT") device at the appropriate time.  (Administrative R. at 1274.).  After receiving approximately 50 documents into evidence and hearing testimony from 16 witnesses, the ALJ issued a decision on December 26, 2013 (the "OAH Decision").  (*See id.* at 1271–1331.)  The ALJ rejected all of Plaintiffs' claims except one: that the District should have given E.F. an electronic assistive technology device approximately one year earlier than it did.  (*Id.* at 1274.)  Accordingly, the ALJ awarded E.F. 20 sessions of twenty-minute, individual AT services to assist him with operating the AT device—an iPod Touch—for the purposes of functional communication.  (*Id.* at 1331.)

In March 2014, Plaintiffs filed this action, appealing the OAH Decision to this Court pursuant to 20 U.S.C. § 1415(i)(3)(A) and asserting 11 other causes of action.  (*See* Compl.)  This Court affirmed the OAH Decision on June 23, and after a number of other dismissals and joint stipulations, granted the District's motion for summary judgment on all of E.F.'s remaining claims on August 25.  Subsequently, Plaintiffs filed this motion for attorneys' fees.

## III.  ANALYSIS

### 1.  Attorneys' Fees under the IDEA

The IDEA provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(i).  Plaintiffs have the burden of demonstrating that the number of hours and claimed rate are reasonable.  *Jordan v. Multnomah Cty*, 815 F.2d 1258, 1263 (9th Cir. 1987).   Here, Plaintiffs have requested $100,560.00 in attorneys' fees (251.4 hours at a rate of $400 per hour).  The District argues that the fees

should be reduced in two different ways.  First, they contend that Plaintiffs are barred from collecting any attorneys' fees incurred after the District made a settlement offer on May 16, 2013, which—it argues—was more generous than what Plaintiffs actually recovered at the OAH Hearing.  Second, the District argues that Plaintiffs may only recover fees commensurate with their degree of success at the OAH Hearing, and because they only prevailed on one issue out of many, they should recover only a relatively small proportion of their fees.  The Court agrees with the District as to only the second of these limitations, and limits Plaintiffs' award of attorneys' fees to **$38,240**.

## A.  Settlement Offers

Although the IDEA generally provides for a prevailing party to collect attorneys' fees, it bars all recovery of attorneys' fees by parents when the fees were "for services performed subsequent to the time of a written offer of settlement."  20 U.S.C. § 1415(i)(3)(D).  The settlement offer[2] must meet three criteria to function as a bar on attorneys' fees that postdate it.  First, in the case of an administrative proceeding like the OAH Hearing here, the offer must have been made at least 10 days before the proceeding.  *Id.*  Second, the offer must not have been accepted within 10 days of being made.  *Id.*  And third, the "court or administrative hearing officer [must] find[] that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement."  *Id.*  Finally, even when all of these requirements are met, an award of attorneys' fees may still be made to a parent "who was substantially justified in rejecting" the settlement offer.  20 U.S.C. § 1415(i)(3)(E).

The first two requirements are not at issue here.  The District made an offer of settlement to Plaintiffs on May 16, 2013, several months before the OAH Hearing.  (Dkt.

---

[2]  Eligible offers are typically known as "ten-day offers."

65 ["Harbottle Decl."] Exh. A.)  Although the parties disagree as to whether Plaintiffs responded to the settlement offer or presented it to their clients, it is clear that the District made the offer and that Plaintiffs did not accept it.[3]  Plaintiffs do not allege that they made a counteroffer.  The disputed issue is whether the relief awarded to E.F. and his parents at the OAH Hearing was "not more favorable" than the settlement offer made to them in May 2013.

The District's May 16 settlement letter offered the Plaintiffs $25,000 and a variety of "designated instructional services."  During the regular school year, E.F. would have received a one-on-one aide during the school day (up to 30 hours per week), District supervision (three hours per month), speech-language services (1.75 hours weekly), occupational therapy services (one hour per week), and assistive-technology ("AT") services (30 minutes per month).  During the extended school year, E.F. would have received a one-on-one aide for four hours a day, thirty minutes of occupational services per week, and thirty minutes of speech-language services per week.  (Harbottle Decl. Exh. A.)

By contrast, the ALJ who presided over the OAH Hearing only awarded Plaintiffs 20 sessions (at 20 minutes apiece) of AT training with an iPod Touch.  The District argues that this award is clearly "not more favorable" than the District's May 2013 offer.

_____

[3]  The District alleges that Plaintiffs simply ignored the May 16, 2013 offer.  Counsel for the District submits a declaration averring that he "conducted a thorough search of [his] files" and that his office has "no record that Plaintiffs' counsel responded to [the May 16, 2013] settlement offer within the requisite time frame."  (Harbottle Decl. at 2.)  To support this version of events, counsel for the District attaches a portion of Plaintiffs' counsel's fee invoice it apparently received in 2014, purportedly to show that there are not entries demonstrating that Plaintiffs' counsel presented the offer to her clients or discussed it with the District.  (Harbottle Decl. Exh. B.)  However, the fee invoice provided by the District is actually from April and May of 2012, not April and May of 2013.  The fee invoice Plaintiffs' counsel submitted to the Court with the motion for fees does have entries indicating that Plaintiffs' counsel discussed the May 16, 2013 offer with her clients (on May 17, 2013) and then with counsel for the District (on May 23, 2013).  (Dkt. 56-1 at 7.)  The Court will proceed under the assumption that the parties discussed the offer but that Plaintiffs rejected it and made no counteroffer.

20 U.S.C. § 1415(i)(3)(D).  It points out that the settlement offer offered significantly more hours of services and assistance than the ALJ ultimately awarded.  (Dkt. 63 at 7.) Additionally, the District argues, the settlement offer included services which the Plaintiffs specifically requested at the OAH Hearing but which were not awarded, including a one-on-one aide.  (*Id.* at 8.)  Finally, the District notes that Plaintiffs could have purchased the 400 minutes of AT training they were awarded at the OAH Hearing from their private consultant at her hourly rate—$155 —for only $1,038.50, a fraction of the monetary portion of the May 2013 settlement offer.[4]  (*Id.* at 7.)

Plaintiffs have two responses to this argument.  First, they argue that they achieved *total* relief that outpaces the District's settlement offer.  For example, they point out that it was not until they retained counsel and filed a due process claim that the District began providing "requested assessments [and] equipment" to E.F.  (Dkt. 67 at 4.)  In other words, Plaintiffs believe that the "relief finally obtained by the parents" should include both what they were awarded by the ALJ and what the District elected to do independent of the OAH Hearing.  This argument is unavailing.  The District's decision to provide E.F. additional services is not "relief finally obtained" by E.F.'s parents under the meaning of section 1415 because it was not awarded in a judicial or administrative proceeding.  *See T.B. v. San Diego Unified Sch. Dist.*, 795 F.3d 1067, 1090 (9th Cir. July 31, 2015) (the limitation on fees asks courts to determine "whether the relief obtained *in a due process hearing* . . . is more favorable than that offered under a settlement") (emphasis added)); *see also id.* (citing Federal Rule of Civil Procedure 68, the template for section 1415(i)(3)(D)(i)(I), which refers to "the *judgment* that the offeree finally obtains" (emphasis added)).  The correct amount of relief to measure against the

---

[4]  The District identifies Plaintiffs' consultant's rate as being $155 per hour, citing a 2014 letter which the District sent to Plaintiffs' counsel.  (*See* Harbottle Decl. Exh. C.)  Although the District does not provide a record citation which the Court could use to verify this rate, Plaintiffs' reply brief does not contest that the rate is accurate.  And it goes without saying that even if the rate were actually much higher than what the District alleges, the monetary value of the proposed settlement would still far exceed the potential private cost to Plaintiffs of the AT training they were awarded at the OAH Hearing.

settlement offer is that awarded by the ALJ at the OAH Hearing.  Here, that is 20 twenty-minute AT sessions.  Other services that the District chose to provide—even if its decision to do so was in response to Plaintiffs' retaining counsel and filing a due process claim—are not part of the calculus in determining whether the relief Plaintiffs were awarded at the OAH Hearing exceeds the relevant settlement offer.  The Court agrees with Defendant that the relief which Plaintiffs were awarded at the OAH Hearing was "not more favorable" than that which they were offered by the District in May 2013.  The threshold requirements for that settlement offer to operate as a bar on subsequent fees are met.

Plaintiffs' other response to the District's argument that its settlement offer bars some of their fees is that they were substantially justified in declining the ten-day offer for two reasons.  The first reason is difficult to understand.  Plaintiffs allege that the settlement offer "did not reflect the true implementation of services (i.e., services, [sic] were delivered within the classroom, regardless of designation as individual or group)." (Dkt. 67 at 4.)  The Court is unclear as to what this means.  The settlement offer specifically noted which services were to be delivered one-on-one and which were to be delivered in a group environment, and Plaintiffs fail to elaborate on how the proposed arrangement was deficient.  This reason does not meet Plaintiffs' burden to show that they were substantially justified in rejecting the District's settlement offer.

Plaintiffs also argue that they were substantially justified in rejecting the settlement offer because it did not include attorneys' fees.  This argument has more merit.  Some courts have held that an IDEA plaintiff is substantially justified in rejecting a settlement offer which contained a very low figure for attorney's fees.  In *Hawkins v. Berkeley Unified School District*, for example, the school district made a settlement offer which included only $500 in attorneys' fees, despite the fact that the plaintiffs' attorney in that case had already billed more than $9,000 in time.  No. C-07-4206, 2008 U.S. Dist.

LEXIS 94673, at **9–10 (N.D. Cal. Nov. 20, 2008).  The court found that the plaintiffs in that case were substantially justified in rejecting the offer in part because the offer "would have required [their attorney] to waive her fee claim for $500."  *Id.  See also Brighthaupt v. District of Columbia*, 36 F. Supp. 3d 1, 9 (D.D.C. 2014) ("Plaintiffs were therefore substantially justified in rejecting the settlement offer based solely on the fact that defendant only offered $300 in attorney's fees.")  Other courts have held that at least in some situations, the fact that a settlement offer does not include attorneys' fees will not justify rejection by a plaintiff.  *See Gary G. v. El Paso Indep. Sch. Dist.*, 632 F.3d 201, 210 (5th Cir. 2011) (barring post-settlement fees where the settlement did not include attorneys' fees but the plaintiff's attorney had only billed 13.8 hours when the offer was made).  Here, the District made no offer of attorney's fees at all, so Plaintiff's counsel would not have been required to waive her fee claim for a pittance.[5]  Nonetheless, the District's offer also made clear that it did not believe Plaintiffs would achieve prevailing party status by accepting the offer—a tacit admission that the District intended to contest a prospective fee motion based on the settlement offer.

The Court finds that Plaintiffs were substantially justified in rejecting the District's May 16, 2013 settlement offer.  Plaintiffs had already incurred significant attorneys' fees by May 2013, and judging by Plaintiffs' counsel's fee records, she and the District spent significant time in 2013 trying to hammer out a settlement.  Presumably the District understood that Plaintiffs—as a requirement of any viable settlement—needed to be reimbursed for at least a portion of their attorneys' fees.  The fact that fees were not included in the May 16, 2013 settlement offer, combined with the fact that the District insisted that the settlement would not entitle Plaintiffs to a subsequent, court-imposed fee award (because it would not grant Plaintiffs prevailing party status), persuades the Court that Plaintiffs were substantially justified in not accepting the May 16, 2013 settlement

---

[5] By the Court's calculation, Plaintiff's counsel had billed 46.2 hours by May 16, 2013.  At her claimed $400 rate, this amounts to $18,480 in legal bills.

offer.  As a result, Plaintiffs' fees will not be barred by their rejection of the settlement offer.

**B.  Degree of Success**

In the Ninth Circuit, awards of attorneys' fees in IDEA actions are subject to the rule—originally announced by the Supreme Court in *Hensley v. Eckerhart*—that fee awards should be related to the success achieved by the attorneys.  461 U.S. 424, 436 (1983).  As a result, a party who only partially prevails in an IDEA action "may recover attorneys' fees commensurate with the party's 'degree of success.'"  *L.H. v. Chino Valley Unified Sch. Dist.*, 944 F. Supp. 2d 867, 871 (C.D. Cal. 2013) (quoting *Aguirre v. Los Angeles Unified Sch. Dist.*, 461 F. 3d 1114, 1121 (9th Cir. 2006)).  This rule is designed to "deter submission of multiple nonmeritorious claims."  *Aguirre*, 461 F.3d at 1120.  The Ninth Circuit has explained:

> It is understandable that without cost considerations, parents facing litigation would bring as many claims as possible, hoping to secure a larger share of the district's resources—whether in the form of reimbursements, additional staff time, or educational technology—than would be otherwise allotted to their children.  Lawyers may also have incentive to bring baseless claims in order to increase billable hours devoted to a case. Acquiring a client with one strong claim should not give special education attorneys the green light to bill time on every conceivable issue.  All children suffer when the schools' coffers are diminished on account of expensive, needless litigation.

*Id.*  The Court's task here, as a result, is to determine on what proportion of their claims E.F. and his parents were successful.  Doing so is difficult, and the Supreme Court has acknowledged that "[t]here is no precise rule or formula for making [the] determination"

of what fees are due to a party under the "degree of success" standard. *Hensley*, 461 U.S. at 436. The Court continued, "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Id.* at 436–37. Importantly, the "degree of success" standard applies even when "the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436. Consistent with this guidance, district courts in this Circuit routinely reduce attorneys' fees awards under the IDEA based on the "degree of success" standard. *See J.M. v. Capistrano Unified Sch. Dist.*, No. SACV 10-0185, 2011 WL 1326905, at *5 (C.D. Cal. Mar. 31, 2011) (reducing award by 66.67%); *S.A. v. Tulare Cty. Office of Educ.*, No. CV F 08-1215, 2009 WL 404656, at *1 (E.D. Cal. Nov. 20, 2009) (reducing award by 90%); *M.M. v. Lafayette Sch. Dist.*, No. CV 09-4624, 2012 WL 3257662, at *13 (N.D. Cal. Aug. 8, 2012) (reducing award by 75%); *G.R. v. Brentwood Union Sch. Dist.*, No. 12-cv-06326, 2013 WL 3369259, at *5 (N.D. Cal. July 5, 2013) (reducing award by 33%).

It would be relatively straightforward to apply the "degree of success" standard here if Plaintiffs' counsel's billing records differentiate work done on successful claims from work done on unsuccessful claims. Unfortunately, none of counsel's billing entries are issue-specific. For example, Plaintiff's counsel lists 23.3 hours—among three separate days—under the description "Preparation for due process hearing (witness preparation, draft questions)." (Dkt. 56-1 at 8.) She does not make any effort to separate time spent on witnesses that testified to the AT issue on which E.F. prevailed. Other entries are similarly not detailed. Plaintiffs' counsel bills 57.3 hours, spanning 10 separate days, as "Draft closing brief." (*Id.* at 9.) The Court has no way to determine what proportion of this drafting time was spent on successful arguments as opposed to unsuccessful ones. Plaintiffs' counsel brought—and prevailed on—a successful claim before the ALJ. She is therefore entitled to a fee award. But it is impossible to discern

from her billing records how much work she performed on the successful claims and therefore how large a fee award she is due under the "degree of success" standard.

Faced with similar situations, some courts in this circuit have resorted to tallying the number of successful claims brought by a plaintiff and comparing that number to the total claims at issue in the case. *See J.M.*, 2011 WL1326905, at *4–5 (noting that the plaintiffs prevailed on "two subissues" of "a total of 22—by this Court's count—issues and sub-issues"); *L.P. ex rel. Z.P.S. Lake Washington Sch. Dist.*, No. C13-1670, 2014 WL 2048192, at *2 (W.D. Wash. May 19, 2014) (reducing award because the plaintiff prevailed on "3 out of 43 issues"). Such calculations have a number of problems and are almost always unsatisfactory. Of necessity, they require assigning each legal claim or "subissue" an equal weight—or coming up with a principled reason to assign different issues different weights. They rely on sometimes artificial distinctions between related legal claims. And they ignore significant "fixed costs" that counsel must incur to bring even one successful claim. Legal claims are not like gallons of gasoline, which all cost the same amount no matter how many you put in your car. Instead, estimating the cost of a lawsuit is much like estimating a car's gas mileage. Just as it takes a disproportionate amount of gasoline to get a car running from a stopped position, it takes a significant amount of resources to bring even one successful claim before an administrative hearing like the one here. But once a lawsuit is running at "freeway speed," the marginal costs to counsel of adding additional claims are relatively low, just as maintaining a vehicle's speed uses relatively less gas.

Here, it is beyond dispute that Plaintiffs prevailed only on a narrow portion of their claims. They litigated four "issues" before the administrative law judge, who noted that they "partially prevailed on a small portion of Issues 1 and 2," and that the District prevailed on "all other issues heard," including the entirety of Issues 3 and 4. (OAH Decision at 61.) A tally of the relevant issues and consideration of the amount of time the

ALJ (and this Court, when it reviewed the appeal) devoted to successful claims as opposed to unsuccessful ones indicates that Plaintiffs likely prevailed on no more than one-quarter of the issues before the ALJ.  Certainly Plaintiffs could not credibly assert that the number is beyond one-third.  This consideration, combined with *Hensley*'s direction that a "district court . . . may simply reduce the award for the limited success." 461 U.S. at 436–37, persuades the Court to exercise its discretion and reduce Plaintiff's fee award by 66.67%.  The Court finds that this reduced award adequately compensates Plaintiffs' counsel for the cost of bringing the successful claims but stops short of draining the school district's "coffers . . . on account of needless, expensive litigation." *Aguirre*, 461 F.3d at 1120.

Plaintiffs argue that this reduction is not warranted because of the "complexity of the case," the "interrelatedness of the issues presented," and the "magnitude of importance of the issue upon which the Plaintiffs prevailed."  (Dkt. 56 at 11.)  None of these rationales is persuasive.  First, *Hensley* makes clear that its rule applies even when claims are "interrelated, nonfrivolous, and raised in good faith."  461 U.S. at 436.  And it would entirely undermine the purpose of the "degree of success" rule to permit counsel to bring a hodgepodge of claims, drive up billable hour numbers, and then argue that the hodgepodge is too complex to sort out for the purpose of calculating fees.  Second, Plaintiffs' argument that E.F.'s communication skills were the "linchpin" of his educational success—and therefore that counsel should awarded full fees based on winning the narrow assistive-technology issue—is at odds with the ALJ's decision. Plaintiffs' claims against the District ran the educational gamut, arguing that the District's staff was not highly qualified, that the District did not adequately train E.F.'s parents, and that the District should have provided E.F. with an individual aide, to name but three examples of Plaintiffs' diverse allegations.  Plaintiffs do not explain how the assistive technology issue was the "linchpin" for these issues or why their success on the assistive technology issues merits attorneys' fees on unrelated issues on which they were

unsuccessful.  Finally, although the Court does not wish to minimize the importance of the District providing E.F. with adequate technological communication tools, if that issue were of considerably greater magnitude than other issues before the ALJ, as Plaintiffs allege, it stands to reason that Plaintiffs would have prevailed on more issues than the narrow AT one.  At the very least, if Plaintiffs had achieved success on a claim that overshadowed all the others, the ALJ would have been unlikely to write, as she did, that Plaintiffs "partially prevailed on a small portion of Issues 1 and 2" only.  (OAH Decision at 61.)  As a result, the Court will apply the Ninth Circuit's "degree of success" rule from *Aguirre* and in its discretion reduce Plaintiffs' fees by 66.67%.

## C.  Fee Calculation

Plaintiffs' counsel alleges that her hourly fee is $400 per hour.  This fee appears to be appropriate given counsel's considerable experience in litigating IDEA cases, declarations submitted by other special education attorneys, and previous fee awards.  Additionally, at least one other district court in this area has found that "the prevailing hourly rate in the Los Angeles community [is] $350 to $525 for special education cases." *C.B. ex. rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, No. SA CV 08-1047, 2012 WL 161806, at *3 (C.D. Cal. Jan. 18, 2012).  As explained above, Plaintiffs' award will be the lodestar, subject to the "degree of success" rule.  Plaintiffs' counsel's fee invoice indicates that she billed 233.7 hours independent of her fee motion.  The Court's review of Plaintiffs' counsel's billing entries indicates that—aside from the fact that they do not separate time out by issue—they appear to be generally appropriate.  Multiplying 233.7 hours by Plaintiffs' counsel's hourly rate of $400 yields a figure of $93,480.  This figure will be reduced by 66.67% subject to the "degree of success" rule, yielding a new figure of $31,160.  To this amount the Court will add the fees Plaintiffs' counsel incurred in

preparing her fee motion: 17.7 hours at the same hourly rate of $400, yielding a figure of $7,080.[6]  The Court therefore awards Plaintiffs **$38,240** in attorneys' fees.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for attorneys' fees is GRANTED IN PART, and Plaintiffs are awarded **$38,240** in attorneys' fees.

DATED:     October 14, 2015

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

[6]  Courts typically distinguish between fees based on work on the underlying merits ("merits fees") from fees based on work on the fees motion ("fees on fees").  The District urges the Court to reduce the fees-on-fees figure by 66.67% as a result of the "degree of success" rule.  There is no reason to do so.  Plaintiffs would have been entitled to file their fee motion even if they had only brought—and won—the single AT claim, and therefore not been subject to the "degree of success" rule at all.  The District offers no reason to believe that the hours Plaintiffs' counsel spent on her motion for fees are any higher—let alone three times as high—as they would have been had she only brought the AT claim on behalf of her client.  And the District's citation to *Thompson v. Gomez*, 45 F.3d 1365 (9th Cir. 1995), is not to the contrary.  There, the Ninth Circuit held that a district court's decision to reduce a fees-on-fees award according to the "degree of success" rule was reviewable for abuse of discretion.  *Thompson* did not hold that district courts may never award full fees-on-fees and partial merits fees.  The Court will therefore in its discretion award Plaintiffs the full amount of fees for time spent preparing the fee motion.