1     **UNITED STATES DISTRICT COURT**

2  **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

3   **HONORABLE CORMAC J. CARNEY, U.S. DISTRICT JUDGE**

4

 E.F., et al.,         )

5             )

        Plaintiffs,   )

6             )

     vs.       ) Case No.

7             ) 8:14-cv-00455-CJC-RNB

 NEWPORT MESA UNIFIED SCHOOL   )

8 DISTRICT, et al.,      )

             )

9       Defendants.   )

 _____)

10

11

12

13      REPORTER'S TRANSCRIPT OF

        MOTION HEARING

14     MONDAY, AUGUST 24, 2015

         1:31 P.M.

15      SANTA ANA, CALIFORNIA

16

17

18

19

20

21

22 _____

23    **DEBBIE HINO-SPAAN, CSR 7953, CRR**

     FEDERAL OFFICIAL COURT REPORTER

24   411 WEST FOURTH STREET, ROOM 1-191

   SANTA ANA, CALIFORNIA 92701-4516

25     dhinospaan@yahoo.com

1          **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFFS:**

4              LAW OFFICES OF KATHLEEN M. LOYER, INC.
               BY:  KATHLEEN M. LOYER, ATTORNEY AT LAW
5              940 Calle Amanecer
               Suite L
6              San Clemente, California 92673
               (949) 369-1082
7
     **FOR THE DEFENDANTS:**
8
               HARBOTTLE LAW GROUP
9              BY:  S. DANIEL HARBOTTLE, ESQ.
               18401 Von Karman
10             Suite 200
               Irvine, California 92612
11             (949) 428-8780

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

<pre>
 1                SANTA ANA, CALIFORNIA; MONDAY, AUGUST 24, 2015

 2                            1:31 P.M.

 3                             - - -

 4           THE COURTROOM DEPUTY:  Calling Item No. 3,

 5   SACV-14-455, E.F., et al., versus Newport Mesa.

 6       Counsel, please state your appearances.

 7           MS. LOYER:  Kathleen Loyer representing the

 8   plaintiffs.

 9           THE COURT:  Good afternoon, ma'am.

10           MS. LOYER:  Good afternoon, Your Honor.

11           MR. HARBOTTLE:  Dan Harbottle for Newport Mesa

12   Unified School District.

13           THE COURT:  Good afternoon.

14       I have the defendant's motion for summary judgment before

15   me.  There is, I think, a few questions I had, and then I want

16   to give both sides an opportunity to say anything else or

17   reiterate what they think was the important points in their

18   briefs.

19       Just the way I framed these issues is what evidence is

20   there before me to demonstrate that the district acted with

21   deliberate indifference?  If you could highlight that evidence

22   from the plaintiff's standpoint, that shows deliberate

23   indifference and then defense take the counter.  Tell me why

24   there's no evidence of deliberate indifference in the record.

25       This is a question I have about the ADA claim.  Isn't -- I
</pre>

sense that is duplicative and based on the same alleged

intentional discrimination as the 504 claim.  Do I have that

right, or do I have that wrong?  And if I have it right, tell

me why I have it right.  And if I have it wrong, tell me why I

01:33PM  have it wrong.

And then finally, it's a leading question, isn't there an

immunity problem with plaintiff's eighth and tenth causes of

action?  Those are the issues I have.  It is the defendant's

motion, so why don't I hear from the defendant first.

01:33PM  MR. HARBOTTLE:  Thank you.

You find this functions fine up here on the side like

this?

THE COURT:  Yeah, that's fine.  Lawyers put it there

because I'm in the middle of a trial.  And when I have a trial,

01:34PM  they find it easier there.  But if it would be more comfortable

for you, you can put it right there in the middle close to you.

MR. HARBOTTLE:  Okay.  Well, your questions, I

think, are right to the heart of the matter.  And the first one

obviously, I think, given the facts that we have cited in the

01:34PM  brief and the evidence that we've cited in the brief and the

uncontroverted facts, we don't think there is evidence of

showing deliberate indifference, which is a pretty high

standard in what would apply under both Section 504 and ADA.

The standards are virtually identical.  The language is

01:34PM  slightly different in the elements as they're set forth in the

504 context.  The word "solely" on the basis of disability
appears there and on the ADA context.  It's on the basis of the
disability.

So the plaintiff showing even just to get over the
threshold of a prima facie case is that the act claimed
discriminatory was performed or undertaken on the basis of
disability or solely on the basis of disability.  And the
threshold for the damages is where Your Honor's question lies,
and that is, was there -- is there evidence of deliberate
indifference?  And the -- many things that we pointed out in
the brief -- I could go over them, but I'm sure you're familiar
with them.

The key couple of things are the -- first of all, the
testimony of Dr. Murphy, who was found to be extraordinarily
qualified, and whose report was found to be appropriate and
whose results in her report were found to be appropriate and
accurate in all respects by the ALJ and affirmed by the Court.
The opinion that Dr. Murphy derived from her report and her
subsequent work with the student was that as of February 2012,
the point at which the parents were hoping to have an iPad for
educational communicative purposes, he was not cognitively
ready for that step.  The ALJ ultimately disagreed.

We didn't make -- we didn't appeal on it because we didn't
think it was reversible error, we simply thought it was a
difference of opinion between our expert and the judge whose

```
 1   job it is to determine which expert she, in this case, found
 2   more persuasive.
 3        Honestly, we felt the evidence was much more solid on our
 4   side for this question.  But as you also know, and I think this
 5   is a critical fact in response to your first question, the
 6   district very soon, quote-unquote, according to the ALJ and
 7   upheld by the Court, provided -- permitted the student to
 8   utilize the iPad in the classroom.
 9        So there was really no evidence whatsoever, both from the
10   administration level, the educational level, and the teacher
11   level that anyone had anything other than his best interest in
12   mind and an opinion from an expert in the form of Dr. Murphy
13   that he wasn't yet quite capable of utilizing the iPad for
14   communicative or educational purposes.  But they gave him one
15   in the classroom.  They let him use his in the classroom for
16   entertainment purposes.  And that was throughout the rest of
17   the process until January 2013 when we, in fact, made the offer
18   of an iTouch device in the IEP.
19        There's also his teacher's testimony that we quoted at
20   some length in the brief and put into the evidence that she
21   felt the same way and that she and Dr. Murphy were
22   collaborating along the way based on his goals, based on his
23   level of readiness, and the goals themselves were upheld in all
24   respect by the ALJ all the way through including the functional
25   communication goals.
```

1    So if the goals are appropriate and the -- we had a

2  qualified expert both a speech-language pathologist and a BCBA,

3  behavioral therapist doctoral level felt -- rendered the

4  opinion that he wasn't ready, that's a rational explanation

01:38PM 5  which, under the TBK, which was recently addressed by the

6  Ninth Circuit and upheld in most part, is perfectly sufficient

7  to overturn or to reject the argument of deliberate

8  indifference.

9    The TBK specifically says so long as there's a rational

01:38PM 10  explanation for the district's undertaking of whatever

11  accommodation it undertook or proposed, then there is per se

12  not deliberate indifference.

13    I think that the progress that the student was making all

14  along and as measured appropriately by the judge and by

01:38PM 15  Your Honor in affirmation of the OAH decision speaks to the

16  deliberate indifference.  This student was making measurable

17  progress throughout the course of the case.

18    And shifting briefly to the evidence presented by counsel,

19  we went in great detail through the uncontroverted facts that

01:38PM 20  were either disputed or undisputed, and we went through

21  additional facts that were set forth by counsel.  None of

22  those, neither the disputed facts that we presented or the

23  disputes as to the uncontroverted facts that we presented, nor

24  the alternative facts remotely rise to the level of a showing

01:39PM 25  of deliberate indifference.  And that goes to the summary

1      judgment standard.

2           Under *Anderson*, if there is no way a jury could find for

3      the non-moving party, if there is not sufficient evidence to

4      support that finding that they seek, then summary judgment is

01:39PM 5      appropriate.

6           Shall I move to the second and third questions?

7                THE COURT:  Yes.

8                MR. HARBOTTLE:  Okay.  You're correct in this

9      respect.  The ADA and 504 allegations are very similar.  I

01:39PM 10     quoted in detail the -- I think it's Paragraphs 217, 218, 219,

11     in that range on Page 63 or so of the Complaint, that

12     specifically calls out under the *Wong* case that the ADA and 504

13     as pled are substantially similar analyses and are analyzed the

14     same.

01:40PM 15          In the 504 allegation, counsel put together a Complaint

16     that specifically says the minor claims that his 504 rights

17     were violated by -- a violation of his rights to a FAPE under

18     Section 504 due to deliberate indifference.  That's

19     Paragraph 219 or thereabouts.  It is not -- it does not get

01:40PM 20     more clear than that, that that's the basis of the claim.  It's

21     not something other than a fake claim.

22          Under the ADA, an analogous paragraph was written that

23     also includes a direct recitation of the FAPE claim under 504,

24     and a two-word or three-word additional phrase talking about

01:40PM 25     access and benefit or -- access and benefit is what the

1    language is.  We addressed the access and benefit prong of that
2    claim under the progress analysis from February 2012 to
3    February 2013 because he clearly was making progress as
4    measured by the ALJ's decision and affirmed by the Court.
01:41PM 5        Again, though, under the ADA in the pleading, it is a FAPE
6    claim under Section 504 that undergirds the majority of the ADA
7    claim, maybe all of it.  Under K.M. itself, a finding of a lack
8    of an IDEA/FAPE violation per se means there's no FAPE
9    violation under 504.  So to the great extent that the claims
01:41PM 10   overlap -- that the FAPE claims overlap, which they do
11   tremendously, almost exclusively in this case, the OAH decision
12   is affirmed by the Court, takes care of those claims.  They are
13   precluded.  And it's also K.M. that specifically says that
14   nothing in that decision changes the normal rule that decisions
01:41PM 15   under the IDEA can preclude determinations under Section 504
16   and ADA.
17       The only thing about that case that's different is that
18   they -- the plaintiffs in that case specified that 28
19   U.S.C. 35160, et seq., is the basis for their ADA claim.  And
01:42PM 20   in this particular case, counsel cited 28 U.S.C. 35130(b)(3), I
21   believe it is, as the basis for their claim.  And that section
22   is a general discrimination claim.  It's just general
23   discrimination as if -- under the FAPE standard as pled in the
24   rest of the Complaint.
01:42PM 25       K.M. very clearly states -- can't give you the page cite,

1    but it's as clear as it can be, that neither K.M. nor the

2    companion plaintiff in that case, D.H., made any claim

3    whatsoever under the FAPE standard under either 504 or ADA.

4    That fact in itself based on the pleadings distinguish the two

01:42PM 5    cases.

6         And the Court later goes on to say that it's addressing an

7    extraordinarily narrow question as to that particular set of

8    ADA regulations, as to deaf and hard-of-hearing children.  The

9    rest of the case supports precisely what this Court ought to do

01:43PM 10   and what our motion asked the Court to do.

11        Finally, I think on the immunity question, I don't think

12   there's any question whatsoever that the district is immune

13   from liability on this.  We pointed this out back in April.

14   It's one of the exhibits in mine, declaration for the motion,

01:43PM 15   it's on AR -- Page 83.  And it very clearly states that these

16   causes of action, one of which has been already dismissed, are

17   subject to immunity under the Eleventh Amendment.

18        As you saw, there was a stipulation prepared by

19   plaintiff's counsel stipulating to cause of action No. 10.

01:43PM 20   No. 8 was an issue for them, but No. 10 they agreed to.  And

21   time got the better of us, and we were trying to incorporate

22   other claims into that stipulation so we wouldn't have to file

23   multiple stipulations.  And by the time we got around to it, to

24   following up and finishing the meet-and-confer, counsel had

01:44PM 25   changed their mind and they didn't want to stipulate to 10

1   anymore.  But it's undeniable that under the law citing the

2   brief, both of those causes of action are subject to the

3   immunity defense.

4       And I want to finalize that discussion briefly on the tort

01:44PM 5   claim.  He didn't raise it, but I think it's important,

6   obviously if you're going to grant on immunity, that's

7   precisely what we're asking for.  But it's important to look

8   briefly at the chronology of the tort claim issue.  Because

9   what we don't want to have is another filing in State Court

01:44PM 10  that keeps this case alive.

11       The timelines as set forth in the brief are

12   extraordinarily clear.  It was filed in March of 2014 -- the

13   Complaint was filed in March of 2014.  The underlying due

14   process Complaint was filed earlier obviously.  And it --

01:44PM 15  underlying due process Complaint had a single line or two

16   specifically calling out that plaintiffs were putting us on

17   notice that they wanted to resolve disputes in an ADR process

18   because of some injury, and they might file a lawsuit.

19       As we detailed in -- in gory detail on the brief, the Tort

01:45PM 20  Claims Act has very strict procedural guidelines, none of which

21   were followed here, and all of which would preclude the claim

22   under the Tort Claims Act as well as the immunity provision of

23   the law.  I'm glad to answer follow-ups on that or come back up

24   at the end of the process.

01:45PM 25       THE COURT:  I guess just a couple questions for you.

**UNITED STATES DISTRICT COURT**

1    It's on the ADA cause of action.  As I understand it, there's

2    two theories of liability.  One would be -- under Title II, one

3    theory would be the failure to provide a FAPE under

4    Section 504, and then the other theory is effective

01:45PM  5    communications.  And as I understand it, what the ALJ found and

6    what I affirmed was that there wasn't electronic assistive

7    technology device brought.  Why isn't that sufficient -- since

8    that was alleged, that was found, why isn't that sufficient

9    under this second theory, under ADA for effective

01:46PM 10    communications?

11         MR. HARBOTTLE:  Two reasons:  No. 1, the Court in

12    K.M. does not specifically say that FAPE in and of itself --

13    FAPE determination in and of itself isn't sometimes enough.

14    But the second and more important reason here is something that

01:46PM 15    I think is glaring in this particular instance, and that is

16    that if you read this Complaint as I have many, many times, you

17    do not see anywhere in it an effective communication claim

18    under 28 U.S.C. 35160, et seq.  They're in separate sections of

19    the ADA regs.  There are separate theories of recovery, and we

01:46PM 20    cite law -- several cases in the motion that specifically say

21    pleadings are not permitted to be amended by virtue of a --

22    seeking to overcome a summary judgment motion.

23         The case has been pending for 17 months.  There has not

24    been a single request nor motion to amend.  It is very clear --

01:47PM 25    counsel cited precisely to the numerical beginning point, even

a subsection, in fact, of the general discrimination provisions

of the ADA as her theory of the case.  Those are not effective

communication provisions.  That's not it.  It is unavoidable to

conclude that a 93-page Complaint in the detail with which this

01:47PM  was prepared didn't contemplate alternative theories.

And by the way, K.M. came out before this was filed.

So this is an available theory of the case for them in their

Complaint, but it was not pled.  Had they meant to plead

28 U.S.C. 35160 and those provisions, then they could have and

01:48PM should have done so before 17 months have passed.

Finally, I don't think there's any law outside it that

says that the ADA standard of deliberate indifference is not

applicable when there's an ADA claim generally speaking.

So in our view, the deliberate indifference standard, even

01:48PM if there had been an amendment 6, 8, 10, 12 months ago would

still be necessary as an obstacle for a jury to find damages

liability under ADA.  And it just isn't there.  No matter how

you frame it, No. 1, it's too late to frame it this way now.

You can't do it in a summary judgment context.  No. 2, even if

01:48PM you permit reframing, you can't prove the deliberate

indifference standard.

And the T.B. case is a little interesting on this point,

because in that case the Ninth Circuit overturned a single bit

of the ADA analysis in the district court case.  And then

01:49PM Ninth Circuit case found that a jury could find deliberate

```
1    indifference theoretically, or maybe not, because the OAH
2    decision previous to the litigation actually specified what
3    kind of training the administration -- the person administering
4    the gastronomy should have.  And the district, for reasons that
5    from past understanding, didn't follow the OAH decision.  They
6    had an IEP before it came out.  Then it came out and they
7    didn't monitor the IEP.
8         So the T.B. court said, look, the district court didn't
9    find a violation, but the Ninth Circuit said when you have a
10   court order telling you what to do and you don't do it, then at
11   least a jury could make that decision.  Here we don't have that
12   at all.  No. 1, they had pled those -- they pled the right
13   allegations.  And again, as in K.M., the Court was very clear
14   to say there that those two plaintiffs had not made any claim
15   under the FAPE element, the FAPE regulations under 504 or ADA.
16   So I think the answer is neither procedurally nor substantively
17   would make any difference.  It shouldn't be permitted.  And
18   even if it were, it wouldn't make any substantive difference.
19              THE COURT:  All right.
20       Ms. Loyer.
21              MS. LOYER:  Thank you, Your Honor.  If I could just
22   address the chronology first, kind of where Mr. Harbottle left
23   off.  We had some delays that perhaps were self-inflicted and
24   some delays that weren't self-inflicted.  And there's been a
25   lot of reference made to a 93-page document.  And part of that
```

UNITED STATES DISTRICT COURT

01:51PM
1  was because of the appeal as was some of the challenges to the

2  remedies listed generally.  And so by the time we got our

3  appeal done and a decision delivered, it was -- we were kind

4  of in a mutually agreeable holding pattern, not to do anything

5  unnecessarily.  And so I think that that's partially what

6  frustrated us all, and I don't say that in a sense of a

7  negative, it's just frustration moving forward and not moving

8  forward in ways that were going to incur expenses on either

9  side of this case.

01:51PM
10      And so I think that with regards to the length of time and

11  some of the actions that were either taken or not taken, it was

12  related to us all trying to be very frugal in the approach of

13  the proceedings in this case.  So I think we're kind of

14  justified and felt we were mutually at the time.

01:52PM
15      Now as to your questions, with regards to the deliberate

16  indifference, we respectfully disagree with opposing counsel as

17  to whether we can prove it or not.  He relies heavily on the

18  ruling, the OAH ruling; however, both the Ninth Circuit as well

19  as the directives from the DOJ make it very clear that what

01:52PM
20  happens in the underlying case really isn't what's applied

21  later on.  We're talking about different standards of review

22  for all three of these laws.  And to lump them together

23  indiscriminately does injustice to the case as well as the

24  minor that we're speaking of.

01:52PM
25      And so our perspective, based on the criteria of the three

```
         1    separate laws, is obviously we disagree with the findings of
         2    the OAH officer.  Moving beyond that to 504 and ADA, we
         3    submitted evidence before in our opposition that the 504 causes
         4    of actions were dismissed by the ALJ.  They were not heard.
01:53PM  5    And so -- because of the lack of jurisdiction.  So this is the
         6    first time that this -- these issues are being brought before a
         7    finder of fact as well as the Court to determine the applicable
         8    law and how it is applied.  So we would respectfully say that
         9    we had no choice but to bring those issues forward.
01:53PM 10        Part of that being as well is the remedies that we're
        11    seeking are damages.  And damages are not available under the
        12    IDEA.  We did breach that aspect of the case, and I -- unless
        13    you have any specific questions later, I don't think I need to
        14    be redundant about it.
01:53PM 15        And our theory of the deliberate indifference is based on
        16    the fact that these decisions were made by what both counsel
        17    and the ALJ found to be very credible witnesses who should have
        18    been aware of the harm that could have been caused by not
        19    providing this child appropriate communication intervention.
01:54PM 20    And that's something that plays to both the 504 as well as the
        21    ADA.  If they are that highly qualified, they should have
        22    known.
        23        And we produced affidavits or sworn declarations from the
        24    experts that are working with this child now and have been for
01:54PM 25    the last 18 months, who not only agree with the concept that
```

this was something that should have been done for this child
much sooner, but more importantly the damage incurred, the
impact on his cognitive development.

The district relied heavily on their self-reporting of his
progress, but they neglect to bring up the fact of how small
that progress was and how low his goals were set. For whatever
reason that ALJ thought that was sufficient, we heartily
disagree that that was a show of progress. The administrative
record is riddled with information where the parents repeatedly
went back and said, "This isn't working. He's not progressing.
He's not progressing." That made him socially isolated, that
it heavily impacted his ability to access any instruction when
it was offered. And so we definitely have a different take on
the case, the facts of the case and the results of what
happened, which from our perspective puts several material
facts in play here that need to be determined.

With regards to the comments that he was given this
iPad -- or he was allowed to bring his iPad in, that was
something that was not used as a communication device, nor did
the district make any effort at that time as a communication
device.

The IEPs that are contained in the administrative record
said that was used as a reward. He was allowed to play games
on it. It wasn't interactive with anybody in the classroom.
As a matter of fact, the way they allowed him to use it

isolated him more during free time.  He did not interact with

other children.  So it completely had a reverse effect the way

they claim to have been using it.

     The other aspect of that is it wasn't facilitated properly

01:56PM  when it was provided.  Our experts who made recommendations,

who understand this, and even the assistive technology

specialist at the district employed and participated and made

recommendations for its use.  It wasn't carried out that way.

And so when we put our team together and started providing this

01:56PM  child the intervention that was recommended, the way it was

recommended, lo and behold he started communicating across

environments.  And so that, to us, provides the Court with the

ability to see the difference when you use that device for a

communication device versus a reward.  He -- it was not used

01:57PM  that way, and it continued to not be used that way consistently

by their own admission.

     We have the transcript of the IEP where that was discussed

that they were not using it on the playground.  They were not

using it during instruction time.  It's a fact-driven case, and

01:57PM  we clearly have a material fact in dispute.

     With regards to the immunity problem.  I think that our --

we relied on a case *CA versus William Hart Junior High School*

*District*.  It is a Fourth Circuit -- or excuse me -- a

California Supreme Court case, and they did establish a duty

01:58PM  and the fact that when you engage in these programs and accept

**UNITED STATES DISTRICT COURT**

the funding, the federal funding, it does abrogate your

immunity.  And that's the basis that we've been arguing the

immunity.

Now, I understand there's a problem with us being in

01:58PM Federal Court.  I feel like we -- again, we're trying to avoid

having parallel suits in two different court systems.  We would

like to avoid that happening.

And the other thing I'd like to mention and opposing

counsel mentioned, we tried very hard to settle this case from

01:58PM Day 1.  We spent a year -- over a year in the administrative

process, multiple IEP meetings, multiple ADR discussions.

We've always tried to do this in a way that wouldn't end up

here.  And unfortunately, we are here.  And so we would ask the

Court to allow our case to be presented in the context that it

01:59PM needs to be presented.

The ADA is based on the concept of communication.  I don't

see how you can separate a claim under the ADA by subdivisions

at this particular state.  We're still in the midst of

discovery.  We're still developing all of our -- all the facets

01:59PM of our case.  We have our -- as I mentioned in our brief, we

have a cutoff date of October 23rd.  And so I don't see that

cutting us off at this point in time really allows us to fully

develop our case and present it to you with all the facts and

all the laws in a cohesive way.

01:59PM I would like to say as I did in my brief that if the Court

1    feels that we are insufficient in any way, we are respectfully

2    requesting the ability to amend, because we haven't amended

3    yet.  And again, we did that because of the mutual efforts from

4    all parties to try and sort this out and avoid any protracted

02:00PM  5    litigation.

6        Now with regards to some of the other points that counsel

7    made, there is the effective communication issue under 504 --

8    excuse me, under ADA, and there also is the failure of FAPE.

9    We feel that we have both.  We feel the effective communication

02:00PM 10    one, we've already proven that case.  That's the one point that

11    the ALJ did agree with us and did find our expert credible and

12    made an award.  But that award was based on the Raleigh

13    standard which, as we discussed in the brief, is a much lower

14    standard than the ADA.

02:00PM 15        The direction given by the DOJ and all the amicus briefs

16    that he has submitted for cases that are related to this aspect

17    of the ADA support that concept that there is no requirement

18    for deliberate indifference under the effective communication.

19    It's a matter of access.  And clearly he did not have access.

02:01PM 20    Even his mainstreaming that's required under IDEA was pushed

21    into that classroom.  It wasn't he went to a general ed

22    classroom or general ed instruction.

23        Even his one-on-one DIS services were provided in that

24    classroom.  He was very much isolated.  And his -- again, his

02:01PM 25    communication device, we were advised he wasn't allowed to take

1    it out on the playground because he didn't want to be

2    responsible for it or they didn't want him to have a strap on

3    him.  So there's a lot of facts here that play into how this

4    clearly did not provide him equal access to nondisabled peers.

02:01PM  5    And again based on the declarations that we provided, we

6    feel the people working with him now are credible.  They have

7    credentials.  They've been around.  And they are going to be

8    able to testify to these things that I'm suggesting to you that

9    were mentioned in their declarations.

02:02PM 10    The two experts that opposing counsel mentioned were the

11   district's speech and language path and the teacher.  Again,

12   they're speaking to a much lower standard.  But their policies

13   towards children with this level of impairment, especially in

14   the autistic community, does state volumes as to what their

02:02PM 15   take is on children who don't progress at the speed they think

16   they should, and they have a mental retardation classification

17   attached to them.

18   It shouldn't make any difference whether he's mentally

19   retarded or not.  If he's nonverbal and has no function of

02:02PM 20   communication based on their own testimony of all the different

21   methods they tried and were not successful, it begs the

22   question, why wouldn't you try AT?  It was a simple test to try

23   and they didn't do it.  I think I've answered all three of your

24   questions, Your Honor.  Thank you.

02:03PM 25        THE COURT:  I think you have.

1          MS. LOYER:  Okay.

2          THE COURT:  I notice there was one issue candidly

3    that I don't think is proper for summary judgment, that deals

4    with the attorney's fees.  But I take it you haven't supplied

02:03PM  5    information, you know, the work that was done, how much time

6    was spent, for example, just on the claim that you have

7    prevailed, the electronic assistive technology device.

8          MS. LOYER:  I have not submitted it because I felt

9    they were incomplete, Your Honor.  And in our response we said

02:03PM 10   that we were still working on certain aspects in the demand and

11   that they would be provided in a timely way.  And that kind of

12   plays into the waiting on the appeal, because obviously the

13   underlying administrative hearing we had negotiations regarding

14   attorney's fees even prior to filing based on the one issue

02:04PM 15   that did not move forward.  And so there was some work done,

16   but I did not submit an entire billing statement for the

17   underlying administrative hearing, that's accurate.

18          THE COURT:  Okay.

19          MS. LOYER:  Not because we are refusing, we just

02:04PM 20   haven't provided it yet thinking we wanted to provide a more

21   complete first finding what happened with the appeal.  And now

22   we are in the midst of this MSJ.  But if it's that important to

23   have it prematurely, we're more than happy to provide it.  It's

24   not a keepaway.  It's just trying to be efficient in presenting

02:04PM 25   it.

1          THE COURT:  I understand.  Thank you.

2          MR. HARBOTTLE:  I'll start with that last point.

3     And normally I would agree that the motions are usually made as

4     a separate procedural matter post adjudication.  But in this

02:05PM 5     particular case, uniquely it was pled as a cause of action.

6     And so we treated it as a cause of action, and we expected to

7     see all the supporting documents in the initial disclosures.

8     There were no fee invoices of any kind.

9          We expected -- we did a request for documents.

02:05PM 10     Specifically it's the number -- No. 1R, Request 1R,

11     specifically calling out all documents supporting a fee claim

12     or fee recovery.  As Your Honor said, plaintiff prevailed on a

13     single AT issue.  And they made noise about potentially

14     recovering feet on that.  So it was a perfectly ripe question

02:05PM 15     to ask, and it was perfectly ripe in terms of time to ask it

16     and to -- expect it in the initial discovery and to ask it in

17     discovery.

18          It is just the case under the law that if you plead a

19     cause of action like this and you fail to comply with initial

02:06PM 20     disclosures and comply with discovery requests, that you are

21     precluded from presenting that evidence later.  That's the way

22     it works.

23          THE COURT:  I have no problem with you asking for it

24     in discovery, but I've just got to be frank with you.  In all

02:06PM 25     my experience, both as a state and federal judge, I've never

**UNITED STATES DISTRICT COURT**

1   seen attorney's fee issue raised as part of a claim of a

2   Complaint.

3        MR. HARBOTTLE:  Neither have I, Your Honor.  And I

4   was also intrigued by your directive that we filed the motion

02:06PM  5   without exception to any of the 12 causes of action.  And then

6   we spent a lot of time thinking, do we include the fee claim or

7   not, because it is a cause of action.  The Court issued a

8   request that we file with respect to the remaining causes of

9   action, so we did so.  I think it has merit, and it should be

02:06PM 10   granted on that ground as well, but I understand your sense of

11   it.

12        I want to go back -- I want to go back to the discovery

13   issue and the amendment issue a little bit, and that is

14   important.  I didn't raise it in the pleadings, and I wasn't

02:07PM 15   going to raise it initially, but it is the case as a fact that

16   it's demonstrable in the body of the joint report that we filed

17   initially in the action that my client had proposed delaying

18   discovery at all until after the adjudication of the IDEA

19   claim.  And both counsel, both Ms. Loyer and her co-counsel,

02:07PM 20   Mr. Brown, refused to do that.  I expected discovery right out

21   of the box and none came.  None came for 14 months.

22        Now, having offered the delay, having offered the

23   opportunity not to overlap the adjudication of the appeal with

24   the discovery process, I think it's highly prejudicial to us

02:07PM 25   now for counsel and her client to say we've just been waiting

1    for the appeal to be done.

2        If you look at the joint report, there's some language in

3    there about we had proposed delayed discovery, and then there's

4    a separate statement that plaintiffs don't believe discovery

02:08PM  5    should occur in phases.  That was the bottom line in the

6    discussion we had about discovery.  So I don't think it's

7    really appropriate to now claim that there hasn't been ample

8    opportunity as the law requires there be.  There has been ample

9    opportunity.  There's been 17 months for discovery to be done.

02:08PM 10        And we're also not in the midst of discovery.  There's

11    been this week or last week the second request for documents

12    sent by counsel.  The first wasn't sent until May, 14 months

13    after.

14        The initial issue, maybe the most substantive issue is

02:08PM 15    this deliberate indifference question and the ADA versus 504.

16    If you look at our Ps and As out of the motion, Page 4, and you

17    look at the two quotes there from K.M., both on the ADA and the

18    504, you see that it's mistaken to say that findings with

19    respect to the IDEA/FAPE standard do not apply preclusively to

02:09PM 20    the 504 standard and the ADA standard.  They just do.  K.M.

21    says they do and both the ADA and the 504.  And as strong as it

22    is in the ADA context, it's stronger in the 504 context.

23        You made a FAPE claim under 504.  And if you've lost it at

24    the IDEA level, you lost it at the district court level.

02:09PM 25    That's why the only thing live with respect to either of those

is the AT issue.  None of the rest of it matters at all.  It's

all subject to the underlying preclusive effect of the OAH

decision, and Your Honor affirmed that.

And frankly, it's the same sort of after-the-fact creation

of an argument that is not permitted at the opposition to

summary judgment level that somehow there is an ADA effective

communication claim based on specific regulations as set forth

in K.M., very clearly a year or so before, at least several

months before this case was filed.  Had that section of the

regulatory scheme been considered as a theory of the case, it

would have been and should have been pled.  And it's highly

prejudicial of us now to just add in a whole collection of

potential claims that were not conceived of initially.

And I think counsel is correct that there is a good-faith

relationship between the parties and the counsel, and there

is -- there was some hope that we could resolve this.  It

didn't happen.  But there is -- it is where it is right now.

And the law is very clear that you don't get a second chance to

correct your pleadings, especially after this long a time, nor

do we continue to do discovery just in order to avoid summary

judgment.

The other thing I want to end with is that counsel, as

there were -- I think there were 28 uncontroverted facts in our

statement of uncontroverted facts, 11 of them, when counsel did

their response, undisputed.  So 11 of the 17 were undisputed.

1    Out of the 17 -- or out of the 28, of the remaining 17, two of

2    them had actual evidence in support of the dispute.  The other

3    evidence was things like the DOJ, amicus brief, which isn't

4    evidence, closing brief before OAH -- counsel's closing brief

02:11PM 5    before OAH and the responsive brief here -- or the opening

6    brief here that recite -- recitation to a footnote within the

7    very document without any evidence whatsoever.

8         Of the two facts that were specified as uncontroverted and

9    material and sufficient to grant summary judgment, one of them

02:12PM 10   referred to an entire 230-page section of testimony without any

11   specificity as to what the facts within that were -- the

12   allegations or facts within that would support opposition to

13   summary judgment.  And the other was a single page of an IEP

14   extracted from the document itself that purported to support

02:12PM 15   some sort of policy argument.  And I guess that's the point is

16   the theory of the case seems to be some vague sense that there

17   is a policy that is at work here that was implemented here

18   that's inappropriate and caused this student harm, but there

19   isn't any evidence to that.

02:12PM 20        I want to point out that mostly what we're hearing is

21   argument.  There's very little facts.  We added some time for

22   counsel to do our opposition, gave her exactly as much time as

23   Your Honor gave us to do our motion, and I expected a

24   recitation of evidence that we would have to refute as to each

02:13PM 25   of those uncontroverted facts, and it was only with respect to

```
 1  those two.  And in both of those cases it was insufficient.  As
 2  a matter of theory is one thing, in the summary judgment
 3  context, material -- genuine disputes of material fact are what
 4  will drive the matter as long as the law is cited correctly.
 5       The last thing I want to say is on the discovery in this
 6  same point, in order to justify further discovery, a party must
 7  show under controlling law what specific facts they would be
 8  able to extract through the discovery process -- they hadn't
 9  been able to do it so far -- and how those facts would preclude
10  summary judgment.  That was supposed to have been done in the
11  opposition.  We're now to the point where we're closing in on
12  trial, and we've had 17 months of adjudication without
13  development of any facts that would justify not granting the
14  summary judgment motion as pending.  Thank you.
15            THE COURT:  Thank you.  Anything further?
16            MS. LOYER:  Just briefly, Your Honor.
17       Again, I go back to our timeline and the discussions that
18  we've been in, and I don't think opposing counsel would
19  disagree, but he might, until we receive the Court's order that
20  a motion be filed, neither party at that point in time were
21  contemplating -- contemplating a motion for summary judgment
22  knowing that we had just filed a joint stipulation to extend
23  discovery.
24       And so I think it's -- I think it's hard to get -- for me
25  it's hard for me to get my head around the position that
```

counsel's now taking when every move we had so many discussions
and letters and nothing was done lightly and nothing was done
without a significant amount of meet-and-confer and exchanging
information.  And so based on the pace of the case at the time
02:15PM is what drove what was done and when it was done.

Could it have been done faster?  Of course, it could have
been done faster.  But based on where we were and the
communication we were having, we all acted in good faith.  And
I think it would be highly prejudicial to my client to not
02:15PM consider that, that nothing was done in any way to disrupt,
delay, purposely not cooperate.  I mean, we've both admittedly
known each other for a long time and have a very good
relationship.  So I would again ask the Court to consider all
the circumstances surrounding this.

02:15PM And I, of course would not deny that there was a request
to delay discovery.  I do have a co-counsel.  Maybe some day
he'll be here for everyone to meet.  It was a mutual decision.
And through the process of the meet-and-confers that we've had,
we did delay it.  We didn't have a formal stipulation, but we
02:16PM did acquiesce to counsel's request.  And the facts are there to
see, that no discovery took place until we got closer in on
things and we were finally going to have our oral arguments on
the appeal.

And so, again, my rebuttal to these comments is that
02:16PM everything was done in good faith, and I would hope that we can

**UNITED STATES DISTRICT COURT**

continue to move forward.  And the fact that we haven't filed

an amendment, we haven't requested to file an amendment, again,

good-faith effort to not encumber the Court or inflate the

process.

02:17PM    Unless you have any other questions for me, Your Honor, I

think I'll close on that.

            THE COURT:  I don't, but I appreciate the arguments

of both sides.

    Let me noodle this for a while, and I'll try to get a

02:17PM decision out shortly.

            MS. LOYER:  Thank you, Your Honor.

            THE COURT:  Thank you.

            MR. HARBOTTLE:  Thank you, Your Honor.

            **(Proceedings concluded at 2:17 p.m.)**

                    **--oOo--**

1                    *CERTIFICATE OF OFFICIAL REPORTER*

2

3    COUNTY OF LOS ANGELES   )
                             )
4    STATE OF CALIFORNIA     )

5              I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, in and for the United States District Court for

7    the Central District of California, do hereby certify that

8    pursuant to Section 753, Title 28, United States Code that the

9    foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is in

12   conformance with the regulations of the Judicial Conference of

13   the United States.

14

15   *Date:  October 13, 2015*

16

17

18

19                              */S/ DEBBIE HINO-SPAAN_*

20                              *Debbie Hino-Spaan, CSR No. 7953*
                                *Federal Official Court Reporter*
21

22

23

24

25

**UNITED STATES DISTRICT COURT**